LYNCH, Circuit Judge
(Dissenting).
The arbitrator interpreted Article 32 of the collective bargaining agreement to say the type of insubordination meant to be encompassed within the “just cause” for *40 termination was insubordination without any mitigating circumstances. The majority says that this interpretation exceeded the arbitrator’s scope of authority. I disagree, and so, with respect, I dissent.
I do agree that this case can be distinguished from Keebler Co. v. Truck Drivers, Local 170, 247 F.3d 8 (1st Cir.2001) and Crafts Precision Industries, Inc. v. Lodge No. 1836, International Ass’n of Machinists, 889 F.2d 1184 (1st Cir.1989), on the grounds given by the majority. I also agree that the district court could reasonably have concluded that it was bound to reverse the arbitrator under Georgia-Pacific Corp. v. Local 27, United Paperworkers International Union, 864 F.2d 940 (1st Cir.1988), or S.D. Warren Co. v. United Paperworkers’ International Union, 845 F.2d 3 (1st Cir.), cert. denied, 488 U.S. 992, 109 S.Ct. 555, 102 L.Ed.2d 582 (1988). Nonetheless, developments in the law of judicial review of arbitral awards make me doubt that Georgia-Pacific is good law now.
Under that evolving law, I think we are required to affirm the arbitrator’s award.[5] The majority relies on language from United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), exempting awards that are merely “[the arbitrator’s] own brand of industrial justice” from a general policy of judicial deference. This qualification was reiterated in United Paperworkers International Union v. Misco, Inc., 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). In Mis-co, however, the Court went on to emphasize language which the majority recites at the outset, but overlooks in its reasoning: “But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.” Id. at 38, 108 S.Ct. 364. The Misco Court then reversed the court of appeals decision to overturn an arbitral award for misreading the evidence. Id. at 45, 108 S.Ct. 364.
The Supreme Court has continued to mandate judicial deference to arbitral awards in subsequent decisions. In Eastern Associated Coal Corp. v. United Mine Workers, 531 U.S. 57, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000), the Court again reversed a decision overturning an arbitral award. In Eastern, the arbitrator had ordered reinstatement of an employee who had been fired for failing a random drug test. The arbitrator reasoned that mitigating circumstances- — including a long employment history and stress caused by family problems — outweighed the admitted drug use. Id. at 60, 67, 121 S.Ct. 462. The lower courts had set aside the award on public policy grounds, a reason rejected by the Supreme Court.
Last year, the Court strongly reaffirmed the high standard required for judicial interference in arbitral decisions. In Major League Baseball Players Ass’n v. Garvey, 532 U.S. 504, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001), the Court overturned the Ninth Circuit’s reversal of an arbitral award. *41 The Ninth Circuit had found reversal warranted because the arbitrator “dispensed his own brand of industrial justice,” id. at 507, 121 S.Ct. 1724, in refusing to consider evidence supporting Garvey’s claim. The court of appeals labelled the arbitrator’s finding “completely inexplicable” and “bordering] on the irrational.” Garvey v. Roberts, 203 F.3d 580, 590 (9th Cir.2000). Nonetheless, the Supreme Court responded by reiterating its holdings in Misco and Eastern:
Courts are not authorized to review the arbitrator’s decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties’ agreement. 'We recently reiterated that if an “arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,” the fact that “a court is convinced he committed serious error does not suffice to overturn his decision.”
532 U.S. at 509, 121 S.Ct. 1724 (citations omitted). Moreover, the Court went on to conclude that the error alleged — ignoring important evidence — did not even rise to the standard of serious error: “The arbitrator’s analysis may have been unpersuasive to the Court of Appeals, but his decision hardly qualifies as serious error, let alone irrational or inexplicable error. And, as we have said, any such error would not justify the actions taken by the court.” Id. at 511 n. 2, 121 S.Ct. 1724. In short, the court of appeals may not substitute its own contractual interpretation for the arbitrator’s, without showing more than “serious error.” That is not the case here.
The majority finds that the arbitrator exceeded his authority in interpreting the collective bargaining agreement and in his decision to reinstate Beaupre. But the agreement gives him precisely that authority. The arbitrator’s authority is set forth in Article 33, which governs grievance and arbitration. The presentation of a grievance is required to resolve “differences ... as to the meaning or application of the provisions of the Agreement.” Any dispute after the third step of the grievance process is submitted to the arbitrator. It is true that Article 33 contains a restriction: “The arbitrator shall have no power to alter or modify any of the terms of this Agreement or to impose on any party a limitation or obligation not explicitly provided for in this Agreement.” Even with such a restriction, it is commonplace that an arbitrator has authority to construe the terms of the agreement he is enforcing. See, e.g., Steelworkers, 363 U.S. at 599, 80 S.Ct. 1358 (“As we [have] emphasized, the question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator’s construction which was bargained for; and so far as the arbitrator’s decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.”). I see nothing in this clause which prohibits the arbitrator from construing the agreement, as he has done here.
The majority also overestimates the restrictions placed on arbitrators’ ability to fashion a remedy. The majority holds that “once an arbitrator finds that an employee has committed an act specifically listed in the collective bargaining agreement as providing just cause for termination, the arbitrator is not free to fashion a separate remedy apart from the one provided by the parties’ agreement.” Opinion at 34. The majority takes this to mean that once the arbitrator found insubordination in this case, he had no discretion as to remedy— he was bound to uphold the employee’s termination. But this view overlooks well-established law granting the arbitrator the same level of freedom in crafting a remedy *42 as he has in contractual interpretation. “[W]here it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect.” Misco, 484 U.S. at 38, 108 S.Ct. 364. In Misco, it was the use or possession of controlled substances on company property which was listed as cause for discharge. The arbitrator’s authority was limited to interpretation and application of terms in the contract. Nonetheless, the Court upheld the arbitrator’s reinstatement of an employee terminated for drug use on company property. Id. at 35, 108 S.Ct. 364. The remedy of reinstatement, under a contractual regime similar to the one at issue here, was within the power of the arbitrator to fashion.
Admittedly, this result — which I believe to be mandated by Supreme Court precedent — poses some problems. It is not entirely satisfactory to say to employers that they can draft the collective bargaining agreement to clearly restrict the arbitrator from exercising the authority that the arbitrator applied here. The realities of what happens at the bargaining table may make this illusory. Article 32 was admirably drafted to give management some flexibility and give workers the protection that not every instance of insubordination must mean termination. It can be questioned why the price of that flexibility should be to permit an arbitrator to second guess management’s judgment to be less forgiving of an employee’s disobedience of a direct order. Here, the employer’s unforgiving attitude is not irrational. Beaupre was asked several times, including by a more mature and senior supervisor, to comply with Arsenault’s directive. But that is not the question for the court.
Instead, under the law that the Supreme Court has crafted, we must defer to the arbitrator so long as he is “even arguably construing or applying the contract and acting within the scope of his authority.” Misco, 484 U.S. at 36, 108 S.Ct. 364. I think we must defer to the award. The majority’s decision is thoughtful, well-written, and sensitive. The majority and I simply have a good faith disagreement about the law. To the extent Georgia-Pacific and S.D. Warren are taken to control the outcome of this case, I think it time for this court to disavow both of those cases as inconsistent with Supreme Court precedent. With regret, I find myself in dissent.

. Alternatively, remand to the arbitrator would be preferable to reversal. "[W]here the basis for an arbitrator's decision is unclear, but the arbitrator's opinion suggests that the decision does not draw its essence from the collective bargaining agreement, remand is appropriate to have the arbitrator clarify the basis for his or her decision.” Young Radiator Co. v. Int’l Union, UAW, 734 F.2d 321, 326 n. 5 (7th Cir.1984); see also Labor Relations Div. of Constr. Indus. of Mass., Inc. v. Int'l Bhd. of Teamsters, 29 F.3d 742, 747 (1st Cir.1994)(remand appropriate when arbitrator may have exceeded his authority); Randall v. Lodge No. 1076, Int’l Ass’n of Machinists, 648 F.2d 462, 468 (7th Cir.1981)(same).